1          **UNITED STATES DISTRICT COURT**

2          **CENTRAL DISTRICT OF CALIFORNIA**

3              **WESTERN DIVISION**

4                  **-oOo-**

5   **HONORABLE FERNANDO AENLLE-ROCHA, UNITED STATES DISTRICT JUDGE**

6

7

8   UNITED STATES OF AMERICA,

9                      Plaintiff,

10      v.                          No. 2:21-cr-00066-FLA-1

11  DAMION BAKER,

12                      Defendant.

13

14

15          **REPORTER'S TRANSCRIPT OF SENTENCING**

16              **LOS ANGELES, CALIFORNIA**

17                **DECEMBER 15, 2023**

18

19  _____

20

21              SUZANNE M. MCKENNON, CRR, RMR
                UNITED STATES COURT REPORTER
22
                UNITED STATES COURTHOUSE
23              350 W 1st STREET, ROOM 3411
                LOS ANGELES, CALIFORNIA 90012
24                  (213) 894-3913
                suzanne@ears2hands.com
25

```
 1    APPEARANCES:

 2

 3    On Behalf of the Government:

 4         DAVID P. KOWAL, Assistant United States Attorney
                United States Attorney's Office
 5              OCDETF Section
                312 N Spring Street, 14th Floor
 6              Los Angeles, California 90012

 7

 8

 9    On Behalf of the Defendant:

10         STEPHEN G. FRYE, Attorney at Law
                Law Office of Stephen G. Frye
11              1 South Fair Oaks Avenue, Suite 401
                Pasadena, California 91105

12

13

14

15    Probation Officer:   JENNIFER STANLEY

16

17

18

19

20

21

22

23

24

25
```

1      (Proceedings commenced on December 15, 2023, at 12:04 p.m.)

2              THE COURTROOM DEPUTY:  Calling LA CR 21-00066, United

3    States of America versus Damion Baker.

4      Counsel, please make your appearances, beginning with the

5    government.

6              MR. KOWAL:  Your Honor, it's David Kowal for the

7    United States.  And with me at counsel table is Jennifer

8    Stanley of the United States Probation Office.

9              MR. FRYE:  Good afternoon, Your Honor.  Stephen Frye

10   on behalf of Mr. Baker, who is present before the Court, in

11   custody.  Also present are numerous of his family members,

12   including his older sister, as the Court was aware from the

13   Presentence Report, who is like a mother to him; his son, who,

14   frankly, had just gotten out of Ironwood, and he's back with

15   his family; and Mr. Baker has two grandsons with him, and

16   they're here, too.

17             THE COURT:  All right.  Good afternoon to everyone.

18     Mr. Baker, as you know, I'm Judge Aenlle-Rocha.  I

19   presided over your Change of Plea hearing on February 17th of

20   this year.  And on that date, you pleaded guilty to two counts,

21   Counts 1 and 12 of the indictment, which charge you

22   respectively with conspiracy to manufacture, possess with

23   intent to distribute, and distribute cocaine, in violation of

24   Title 21 United States Code Sections 846 and 841(a)(1) and

25   (b)(1)(B), and felon in possession of a firearm, in violation

1    of Title 18 United States Code Sections 922(g)(1) and (g)(9).

2        We are here today for your sentencing, and I want to tell

3    you a little bit about how the hearing will unfold this

4    afternoon.  I mentioned some of these concepts to you during

5    your Change of Plea hearing, but it's certainly been a while

6    since you were last here.

7        So under the Sentencing Reform Act of 1984, the United

8    States Sentencing Commission issued a series of guidelines for

9    judges to consider when sentencing individuals in criminal

10   cases.  Today, the sentencing guidelines are advisory, which

11   means that they're no longer mandatory and binding on judges.

12   Nevertheless, even though they're not mandatory, I still am

13   required to arrive at a correct sentencing guideline range, and

14   I am required to consider that range along with a number of

15   other factors before I select and impose a final sentence.

16       As a result, during our hearing this afternoon, I will

17   make calculations under the sentencing guidelines, and I will

18   arrive at a final sentencing guideline range, and I will

19   consider that range before selecting and imposing a final

20   sentence.

21       I will consider the impact of the parties' Plea Agreement

22   on sentencing.  If either side or both sides have objections to

23   the Presentence Report, including the calculations under the

24   guidelines, I am going to hear those objections, and then I

25   will rule on the objections.  I will consider the statements

1   that have made by the prosecutor in writing and at the hearing

2   today, along with those made by your attorney.  And I will hear

3   any statement that you would like to make.  You are under no

4   obligation whatsoever to say anything or to speak.

5       I will consider the recommendations of the Probation

6   Officer.  I will consider whether a sentence within the

7   sentencing guideline range is appropriate in your case or

8   whether I should depart or vary from that range.

9       I am going to consider a number of factors that are set

10  forth at Title 18 U.S. Code Section 3553(a) -- we typically

11  refer to them as the 3553(a) factors -- again, before imposing

12  a final sentence.  My guess is you've reviewed those 3553(a)

13  factors with your attorney, but just to be certain you're aware

14  of what they are, they include all of the following, which I'm

15  required to consider:  the nature and circumstances of the

16  offenses that you've been convicted of and your personal

17  history and characteristics; the need for the sentence that I

18  impose to reflect the seriousness of the crimes; the need for

19  the sentence to promote respect for the law and to provide a

20  just and fair punishment for the crimes; the need for the

21  sentence to afford or provide adequate deterrence to future

22  criminal conduct; the need for the sentence to protect the

23  public from further crimes by you; and the need for the

24  sentence to provide you with any needed educational or

25  vocational training, medical care, or other correctional

1    treatment in the most effective manner that is available to us

2    today.

3        I am also to consider the types of sentences available,

4    and I must do my best to avoid a sentencing disparity that is

5    unwarranted among defendants with similar criminal histories

6    and records, who have been convicted of similar crimes.

7        I also must consider the need to provide restitution to

8    victims of the crime.  Not all of the factors that I just

9    mentioned will apply in your case, but that's the entirety of

10   the 3553(a) factors.

11       In preparing for today's hearing, I have read and

12   considered the reports and recommendations that have been made

13   by the U.S. Probation Officer, along with the sentencing

14   memoranda that had been filed by the government, the

15   prosecutor, and by your attorney, including a number of letters

16   that were submitted on your behalf by family members.

17       Have both parties received and reviewed the final

18   Presentence Report?

19            MR. KOWAL:  Yes, Your Honor.

20            MR. FRYE:  Yes, Your Honor.

21            THE COURT:  Mr. Frye, have you read and discussed the

22   final Presentence Report, the addendum to it, and the

23   recommendations in that report with your client?

24            MR. FRYE:  I have, Your Honor.

25            THE COURT:  And have you explained to your client the

1    standard conditions of probation and supervised release that

2    are in the Court's Second Amended General Order 20-04?

3              MR. FRYE:  Yes, Your Honor.

4              THE COURT:  Mr. Baker, have you read and discussed

5    the final Presentence Report, the addendum to it and the

6    recommendations in it, and the standard conditions of probation

7    and supervised release that are contained in the Court's Second

8    Amended General Order 20-04 with your attorney?

9              THE DEFENDANT:  Yes, sir.

10             THE COURT:  Okay.  I don't believe the Second Amended

11    General Order was attached to the Presentence Report in this

12    case, so I will ask you whether you waive reading of the

13    standard conditions of probation and supervised release

14    contained in the Second Amended and General Order?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Okay.  And, Counsel, do you join and

17    concur in that waiver?

18             MR. FRYE:  I do, Your Honor.

19             THE COURT:  All right.  I would like to summarize the

20    Probation Officer's sentencing guideline calculations and

21    recommendations to me.  The Probation Officer has selected a

22    base offense level of 30.  This is pursuant to Guideline

23    Section 2D1.1(a)(5) and (c)(5).  That level is based on the

24    drug quantity table.

25        Mr. Baker has admitted in the factual basis to his Plea

1   Agreement that his participation in the conspiracy involved at
2   least 500 grams of crack cocaine, including 375.6 grams of
3   crack cocaine sold to a confidential informant.  Because the
4   offense involved at least 280 grams of crack cocaine or cocaine
5   base and less than 840 grams, then the base offense level that
6   corresponds is 30.
7        Pursuant to Guideline Section 1B1.3(a)(2), under the
8   relevant conduct provisions, the behavior that constitutes
9   Mr. Baker's participation in the conspiracy to distribute and
10  possess with intent to distribute at least 500 grams of crack
11  cocaine is considered relevant conduct, because it is part of
12  the same course of conduct or common scheme or plan as the
13  offense of conviction, and the offense of conviction is of a
14  character for which Guideline Section 3D1.2(d) would require
15  grouping of multiple counts.
16       Also, Count 12 has been grouped with Count 1 for guideline
17  calculation purposes because it embodies conduct that was
18  treated as a specific offense characteristic in the guideline
19  applicable to Count 1.
20       Probation Officer also recommends a two-level increase
21  pursuant to Guideline Section 2D1.1(b)(1) because Mr. Baker
22  possessed a firearm during the charged offense.  Mr. Baker
23  specifically possessed a Springfield Armory Model XD 9m -- 9mm
24  pistol, along with ammunition and magazines for the pistol, for
25  the purpose of protecting his crack cocaine business and the

1    drugs and the money that were kept at his residence.

2        The parties have stipulated that this two-level

3    enhancement should apply pursuant to Mr. Baker's Plea

4    Agreement.  There is evidence in the record that Mr. Baker

5    possessed the firearm knowing he had been convicted of a number

6    of felony crimes in the past.

7        A four-level increase has been applied -- or is

8    recommended that I apply because Mr. Baker was an organizer or

9    leader of a criminal activity that involved five or more

10   participants or was otherwise extensive pursuant to Guideline

11   Section 3D1.1(a).  The conspiracy in this case involved 11

12   codefendants and a number of unindicted coconspirators.

13       Mr. Baker directed his coconspirators to manufacture,

14   package, and distribute crack cocaine to customers and others.

15   He directed the receipt and storage of drug proceeds, arranged

16   for a codefendant's residence to be used as a stash house, and

17   recruited individuals to join the conspiracy.  The parties

18   stipulated to the application of this enhancement in

19   Mr. Baker's Plea Agreement.

20       A three-level decrease for early acceptance of

21   responsibility is also recommended, based on Mr. Baker's

22   acceptance of responsibility and his timely notifying the

23   government of his intent to enter a guilty plea.

24       So this results in a total offense level of 33.  Mr. Baker

25   has been assigned four criminal history points, which places

him in Criminal History Category III.  And this leads to a
sentencing guideline range 168 to 210 months.

The statutory maximum term of imprisonment for Count 1 is
40 years.  There is also a minimum mandatory term of five
years.  And the maximum term of imprisonment on Count 2 is
10 years.

With respect to supervised release as to Count 1, the
maximum term is life.  There is a minimum term of four years.
And as to Count 12, the maximum term is three years.
Supervised release terms, by law, must run concurrently.

Under the guidelines, the guideline range for Count 1 for
supervised release is between four and five years, and between
one and three years for Count 12.

Mr. Baker is not eligible for probation because it's
precluded by statute and under the guidelines.

With respect to a fine, the maximum fine for Count 1 is
$5 million.  The maximum fine for Count 12 is $250,000.  The
guideline range for the fine is between $35,000 and $5 million.
There is a special assessment of $100 per count, which results
in a total special assessment of $200.

From reviewing the parties' respective sentencing
memorandums, it appears that the parties object only to the
base offense level of 30 and not to any of the adjustments that
have been agreed to in the Plea Agreement, but I will wait to
hear from the parties to see if that is correct.

1    So I am going to first take argument on any objections to
2  the Presentence Report and the calculations that are set forth
3  on the report.  I will then rule on those objections.  I will
4  then select a final sentencing guideline range.  And after I've
5  done that, then I will hear from Counsel and Mr. Baker, if he
6  would like to speak, as to the 3553(a) factors.
7    So let me start with any objections to the Presentence
8  Report, and I will turn to the government first.
9         MR. KOWAL:  Yes, Your Honor.  One objection which we
10 set forth in our written materials is to the base offense
11 level, that we would ask that the Court give defendant the
12 benefit of his Plea Agreement.  And the cocaine guideline for
13 powder cocaine rather than crack cocaine, we explained the
14 basis in our written material that it's, based on the Attorney
15 General's recent recommendation and memorandum, saying that
16 there is no basis, reasonably, to distinguish between the two
17 and that the powder cocaine is the proper one to adopt.
18    Recognizing that the Court has not adopted that guideline
19 for other codefendants, we would ask the Court to do a
20 six-level variance in this case under 3553(a), to give him the
21 benefit of the Plea Agreement on that factor on that factor --
22 on that basis.
23    With respect to criminal history, in our sentencing
24 position, we calculated six criminal history points.  We agree
25 with the Probation Office that, under the amended guidelines,

1   this defendant gets no criminal history points for being on

2   probation at the time because he did not have seven criminal

3   history point threshold; therefore, it's four criminal history

4   points.  In any event, it still put him in Criminal History

5   Category III.

6        The only other thing to highlight to the Court is, I've

7   talked to Mr. Frye -- he'll bring this up -- I believe he has a

8   change to one sentence of the Presentence Report, which doesn't

9   go to guideline calculations, but I know he wants to raise it

10   at some point.

11        And then the only housekeeping matter I would just add to

12   the Court's agenda is there is a request for forfeiture in this

13   case, and we will be requesting the Court impose forfeiture

14   consistent with the preliminary order of forfeiture at the

15   appropriate time.

16        THE COURT:  All right.  Thank you.

17   Mr. Frye?

18        MR. FRYE:  Thank you, Your Honor.

19        Well, obviously, as we said on the sentencing memorandum,

20   we object to the crack cocaine guidelines to establish the base

21   offense level.  Mr. Kowal and I agree with it.  We're well

22   aware what the Court has done with prior defendants, so I don't

23   want to belabor the point, although I do want to highlight, at

24   least for the record, as we stated in my response to the

25   government's sentencing memorandum, at least one other court

1    has used the powder cocaine guidelines as the starting point

2    when assessing the punishment for a defendant in a crack

3    cocaine case.  So there is -- other judicial officers in this

4    district have done that.

5        With regard to -- and I don't know if it's correctly

6    stated as an objection or simply a request, if the Court -- and

7    I've discussed this, as Mr. Kowal noted, with him.  The very

8    last in paragraph 82 of the Second Amended Presentence Report,

9    which I've -- I did not want to highlight because I did not

10   want to put it in the public record, but this sentence has

11   nothing -- first of all, Mr. Baker denied saying what Los

12   Angeles police officers said he said, but, more importantly,

13   this could affect his security when he's in the facility where

14   he goes.  As the Court's aware, he will be required to show his

15   Presentence Report to his fellow inmates, and this is not

16   something that they're going to take kindly to, or Mr. Baker is

17   concerned about that.  And it doesn't add anything to --

18   paragraph 82.  It's just says what was in a police report.

19        THE COURT:  So you're objecting to inclusion of that

20   sentence in the PSR?

21        MR. FRYE:  Well, I don't know whether to object to

22   the inclusion or to make it as a request that the Presentence

23   Report be amended to strike that sentence.  I guess I'll be

24   doing both.  I'm objecting to the sentence and then asking that

25   it be stricken from an amended Presentence Report.

```
1              THE COURT:  I'll ask the Probation Officer,
2    Ms. Stanley, whether it accurately reflects what is in an LAPD
3    file, that I presume is reviewed in connection -- this concerns
4    a December 14, 1997, arrest and then March 23, 1998, conviction
5    for possession for sale and sale of a controlled substance in
6    the Los Angeles Superior Court.  Make sure we're talking about
7    the same thing.
8              MR. FRYE:  Yes, Your Honor.
9              THE COURT:  Okay.
10             MS. STANLEY:  Yeah.  If the PSR states that,
11   according to LAPD records, it states that, which means that
12   that would be the case, that the arrest report does reflect
13   that, in fact, I am not aware from my colleague, Officer Adnan
14   Chaudhry of any attempts to inspect that police record.  I have
15   not seen it myself.  I can also contact him.  I am more than
16   happy to step outside the courtroom and contact him and see if
17   that is the case or not.
18             MR. FRYE:  I am sure it is probably in the report.
19   We're not disputing that.  We're asking it be stricken, for
20   security concerns, for Mr. Baker once he's designated to his
21   final facility.
22             THE COURT:  Is the concern -- can you help me?  Is
23   the concern about identifying particular individuals?
24             MR. FRYE:  Yes.  These are people he grew up with
25   and -- at any rate, as I understand it, and still is in, you
```

1  know --

2          THE COURT:  What if I ordered redaction of the words

3  named and then the individual names after that and everything

4  else?

5          MR. FRYE:  Well, that would be preferable to the way

6  it is now.  However, the fact that someone may have said

7  something to law enforcement is also not -- in certain

8  communities and certainly within, you know, the, I guess, gang

9  that is at issue here is not -- it's disapproved of.  I'll put

10  it that way.

11          MS. STANLEY:  Your Honor --

12          THE COURT:  I understand that Presentence Reports are

13  confidential; right?  They're not available to the public.

14          MS. STANLEY:  Correct, Your Honor.

15          THE COURT:  They go to the Bureau of Prisons.  I

16  mean, why would inmates have access to his Presentence Report,

17  potentially?

18          MR. KOWAL:  Your Honor, may I address the Court?

19          THE COURT:  Yes.

20          MR. KOWAL:  First of all, this is all non-material to

21  the sentencing factors here.

22          THE COURT:  It is.

23          MR. KOWAL:  The defendant has admitted in his Plea

24  Agreement that he is a gang member.  So that is what the

25  government cares about in terms of our sentencing arguments.

1     I am sensitive to Mr. Frye's security concern.  I

2   understand that defendants in the Bureau of Prisons are not

3   allowed to have their Presentence Report in their cell.  I also

4   have experience that that is not always honored and sometimes

5   it happens.  I also have personal experience with defendants

6   being asked by their inmates to see their Presentence Report,

7   to see if they, in fact, have informed in any way.

8     So when Mr. Frye brought this to me, I see that as a

9   legitimate safety concern.  I don't know -- and the Probation

10  Office can inform us whether, at this late stage, we can make

11  this amendment.  But given, as Mr. Frye says, this is just

12  something in the police report, that that last sentence isn't

13  material to any determination that needs to be made, I would

14  for this -- because I've -- again, I'm not saying this happens

15  all the time, but it happens rarely.  But when it does happen,

16  it can be important.  And so given that we do have a gang case

17  here, I would support the request to the extent it is feasible

18  to do so.

19     MS. STANLEY:  Your Honor, just two things for the

20  Probation Office.  The first thing is that the -- from our

21  standpoint and from what I know for a supervision officer that

22  this one sentence, although seems very minimal, would be a

23  great help for supervision because of potential associations;

24  right?  Because that is always a concern to monitor when on

25  supervision, just to make sure that the person on supervision

1    is in compliance and not committing additional criminal

2    conduct.  And that greatly aids that officer in determining

3    that and also seeing how they can help and seeing community

4    support.

5         The second thing is that a proposal that can be made --

6    and it can be amended, by the way, Counsel, at this stage.

7    Actually, I've had it before, an order from a court before to

8    do that.  But the proposal would be to -- at this stage, to

9    redact, I think, the full sentence at this point.  Perhaps, so

10   that way, not only does it meet security concerns but also, for

11   our officer's standpoint, our officers can also be equipped at

12   seeing, well, this is what the sentence stated.  So may be

13   redact it for BOP purposes, if that makes sense.

14             MR. FRYE:  That would be acceptable, Your Honor.

15             THE COURT:  Okay.  Then that's what I will do.  I

16   will order the Probation Office to redact the final sentence of

17   that paragraph -- this is paragraph 32 in the Presentence

18   Report -- before it is conveyed and sent to the Bureau of

19   Prisons.

20             MR. FRYE:  Paragraph 82, Your Honor.

21             THE COURT:  Okay.  If I misspoke, I'm sorry.  I meant

22   82.

23        All right.  Anything else on any objections to the

24   contents of the Presentence Report or the calculations

25   contained in the Presentence Report?

1          MR. KOWAL:  None from the government, Your Honor.

2          MR. FRYE:  None other than what we stated.

3          THE COURT:  All right.  I am consulting and taking

4    into account the 2023 edition of the sentencing guidelines.  As

5    to those portions of the final Presentence Report to which the

6    parties do not object, I adopt the final Presentence Report as

7    my findings of fact and conclusions of law regarding the

8    advisory sentencing guidelines.

9          With respect to the parties' objection to the base offense

10   level, I do find that the Probation Officer's base and total

11   offense level calculations in the final Presentence Report,

12   they are accurate.  So I find the total offense level to be 33.

13   This is based on the evidence that is set forth in the

14   Presentence Report and in the factual basis to Mr. Baker's Plea

15   Agreement.  The base offense -- the correct base offense level

16   is 30.

17         I am required by Supreme Court and Ninth Circuit precedent

18   to arrive at a correct calculation of the sentencing guidelines

19   based on the facts in the case.  And the reason it's been set

20   at that amount or that figure is, again, because, during the

21   life of the conspiracy between August of 2019 and May of 2020,

22   Mr. Baker has admitted that he conspired with the 11 other

23   codefendants to engage in -- I'll call it trafficking of at

24   least 500 grams of crack cocaine.

25         DEA lab reports also show that the net weight of the crack

1    cocaine that was involved in the drug transactions, in which

2    the undercover confidential informant participated, that those

3    transactions, which I understand occurred -- or at least the

4    reports are dated as having been prepared and issued between

5    January and July of 2020, that they establish a total net

6    weight of 375.6 grams of crack cocaine or cocaine base.  So it

7    clearly places the amount of crack cocaine within base offense

8    level 30, because the amount falls within 280 grams of cocaine

9    base and less than 840 grams of cocaine base.

10           The parties agree to all of the other modifications or

11   enhancements -- the sentencing guideline range, the two-level

12   enhancement for possession of a firearm, the four-level

13   enhancement for organizer/leader, and the three-level downward

14   adjustment for acceptance of responsibility.  That results in a

15   total offense level of 33, with a Criminal History Category of

16   III.  This results in a sentencing guideline range of 168 to

17   210 months.

18           So as I said earlier, 18 U.S.C. Section 3553(a) lists a

19   series of factors that I am also to take into consideration, in

20   addition to the sentencing guideline range, before I can impose

21   a final sentence.

22           Both sides have filed sentencing memorandums, which I

23   reviewed along with the supporting documents.  So let me turn

24   to the government first.

25           Any victims in the case?

1          MR. KOWAL:  No, Your Honor.

2          THE COURT:  All right.  Would you like to be heard as

3    to the 3553(a) factors before I impose sentence?

4          MR. KOWAL:  Yes, Your Honor.  Thank you.

5          THE COURT:  Go ahead.

6          MR. KOWAL:  First, in looking at the aggravating and

7    mitigating factors here, the aggravating factors are clearly

8    predominate and very serious.  This is the number one defendant

9    in this case, and he is such for a reason.

10         We've argued in our sentencing position paper that, even

11   though he's received a plus four for a major role, that even

12   that doesn't fully account for both his role and just the

13   serious nature of the crime that he both organized and led.

14         Now, Mr. Frye, in his reply papers, did argue that,

15   essentially, this is captured -- that his role is captured in

16   the plus-four enhancement, and it's a reasonable argument to

17   make.  Sometimes -- the role adjustment does go to his role and

18   he's getting the highest level.

19         But what we're trying to urge to the Court in the 3553(a)

20   sense is that, this is not just more than five people; it was

21   11 people, 11 people whose lives are essentially changed

22   forever and that he recruited and that he made happen.

23         And that, also, really, in this case, he's not just the --

24   you can be an organizer and leader and get a plus four for

25   setting up the crime or for leading the crime and supervising

others during the course of its commission.  He did both.  In both ways, this case never happens without Mr. Baker.  He is at the heart of everything that goes on in this organization. There is very few phone calls that isn't tied very closely to him.  There's no overt acts that he's not at the heart of.

There were numerous undercover buys, in which he's involved in every single one.  Gun transactions, which he is at the heart of or knows about were clearly foreseeable to him.

The length of the conspiracy is extremely lengthy, and I just think of each defendant in this case who is here because of Mr. Baker.  The two drug suppliers, both of them, recruited, organized, coordinated by Mr. Baker.  The various low-level people who are distributing to customers, doing it under his supervision or under the supervision of his lieutenant, Mr. Carr.  Mr. Carr himself, who is working day to day to operate this.  The stash house operator, who has a drug problem herself, who he gets to run the stash house in the Nickerson Gardens Housing Project.  His own fiance, who is cooking crack cocaine at his residence.  Storing drugs, storing guns at his residence.  He is just, quite simply, the heart of this very, very serious transaction -- crime.

For these other codefendants, at their sentencings, we were often talking about, what was their role?  What did they know about?  Which of these events were they involved in?  But not for Mr. Baker's, Your Honor.  I mean, there are times when

1   there are phone calls that he's not involved in directly or

2   transactions where he's not present.  But, really, in any real

3   logical sense, he's at the heart of everything.

4          The aggravating factor I point in is that -- just the

5   nature of -- going to his characteristics as a person who is

6   likely to re-offend again and his commitment to criminal

7   conduct, I point to, as I did in the sentencing papers, the

8   involvement of so many close family members and so many people

9   he's close to who are involved in the crime with him.

10          To summarize, he's all in in every way.  He doesn't seem

11   to have any other employment.  He's doing this all the time.

12   He's involving his fiance, his fiance's elderly mother.  He's

13   involving his stepson.  He's involving his half brother,

14   Mr. Carr.  So his whole life is committed to it.  And I think

15   that is an aggravating factor here because -- and his home is a

16   place where crack is being cooked, where guns are being stored,

17   where money is being transmitted -- is being either stored or

18   sent out to buy more drugs.  So it's the all-encompassing

19   nature of this crime for him as a human being, for the way that

20   it's affecting all these other lives.

21          And, of course, you know, it almost -- it should be -- it

22   should be mentioned, again, that this is a crime that is

23   occurring in his community that he's organizing.  This is a

24   community that is vulnerable.  This is -- he had a -- in some

25   ways saw gang and drug crimes as a young person, as did many of

1    the defendants who came before this Court.  In many ways, I

2    feel a lot of empathy for each of these defendants, including

3    this defendant, because they grew up in very difficult

4    circumstances and saw a lot of terrible things in an

5    environment that wasn't conducive to some of them for an easy

6    life.

7         But we've seen many of their family members and colleagues

8    who did rise up from that.  But this defendant is preying on,

9    continuing that miserable existence for this community in the

10   heart of Los Angeles.  He's making it worse.  He's running a

11   crack house in the midst of a housing project for people who

12   need government assistance to live and are more vulnerable,

13   people who are African-American who are dealing with all the

14   troubles of being African-Americans in this world.  He's making

15   their lives worse, not better.  He's not lifting them up.  He's

16   infecting this community with the very worst of guns and drugs

17   and doing it over and over again, doing it for the nine months

18   we had a wiretap up.  For the times we did search warrants,

19   he's always at the heart of it.  He's always doing it

20   willfully, readily.  And it's just, you know, a very, very

21   serious crime.

22        Again, we do want the Court to take into account that, you

23   know, that the Department of Justice is taking crack cocaine

24   and treating it more like powder cocaine.  I know the Court has

25   made the reasonable argument that this isn't Congress acting;

1    this isn't the Sentencing Commission acting.  But I think the

2    reasons that are set forth in the government's memo are worth

3    taking into consideration, are a mitigating factor.

4        I know we've discussed his codefendant, Mr. Carr, and his

5    sentence, and we're recommending less than he got for Mr. Carr.

6    And I just want to state on the record there are times when

7    guidelines change, they get more lenient, or an approach

8    changes.  And some benefit, and some don't.  And we're asking

9    you to give Mr. Baker a benefit that we didn't ask you to give

10   to Mr. Carr.  Sometimes that can seem arbitrary.  But I think,

11   because, as it is based here on the DOJ memo, it's based on

12   reasonable reasons, we'd ask the Court to consider those

13   reasons for this defendant, as you have in some of the other

14   defendants where you've sentenced somewhat below the crack

15   guidelines, so I do want to put that on the record.

16       But on a whole, this is a very serious crime; a defendant

17   who is primarily and greatly responsible for those crimes.  It

18   is true he is only in Criminal History Category III.  He

19   doesn't have as bad a criminal history as some of these other

20   codefendants and, I think, in fairness, that should be noted.

21       He certainly does have some concerning criminal history

22   that has been taken into account adequately in the guideline

23   history, including his spousal abuse convictions.  But those

24   aren't as bad as some of the other convictions for some of the

25   codefendants.  Yet, on the other hand, his ledger with respect

1    to this crime.  And it's a serious, long-term crime that's

2    hurting the community, that's hurting his own codefendants, who

3    he recruited to be involved, that's hurting countless other

4    individuals that are receiving the drugs and feeding their

5    addictions.  The aggravating factors are extreme.

6         So with that, unless the Court has questions, the

7    government would submit.

8              THE COURT:  Based on your sentencing memorandum and,

9    again, based on the final sentencing guideline range that I've

10   calculated, for the reasons that I've stated, the government's

11   position is that I should grant a two-level downward variance

12   to 135 months?  Is that still your position or --

13             MR. KOWAL:  Yeah.  I think the way -- I think it was

14   we got six levels for the crack.

15             THE COURT:  Well, you seem to be advocating for, of

16   course, a different base offense level.

17             MR. KOWAL:  Right.

18             THE COURT:  But then asking for an upward variance

19   from that level.

20             MR. KOWAL:  Two levels above the high end.

21             THE COURT:  Right.  But trying -- but applying it now

22   to the guideline range that I've calculated, again, based on

23   the Presentence Report and the reasons that I've stated, which

24   results in an offense level of 33, and a Criminal History

25   Category of III, if your recommendation is still 135, that

1    would be a two-level downward variance.

2               MR. KOWAL:  It is 135, and so that is -- yes, I think

3    that is fair.

4               THE COURT:  Okay.

5               MR. KOWAL:  Thank you, Your Honor.

6               THE COURT:  Thank you.

7         Mr. Frye?

8               MR. FRYE:  Thank you, Your Honor.

9               THE COURT:  I don't know if Mr. Baker would like to

10   speak, but if so, you're both welcome to go to the lectern,

11   please.

12              MR. FRYE:  Your Honor, several things.  First of all,

13   with regard to the characterization of my client's activities

14   by the government, that is fully taken into account under the

15   four-level enhancement under Section 3D1.1, application note 4.

16   Exactly the conduct that the government is complaining about is

17   specifically stated in application note 4, as I've noted in our

18   response to the government's sentencing memorandum.

19        And while we -- Mr. Kowal is correct.  My client had no

20   choice where he was born, obviously.  He didn't grow up in the

21   circumstances like I did or Mr. Kowal presumably did or Your

22   Honor -- I don't know your background that extensively.  But I

23   presume, like most lawyers, you didn't grow up in a situation

24   like Mr. Baker.  None of us did.

25        So the conduct about which the government complains, which

1    is serious and we do not mean to minimize that in any way

2    whatsoever, but from Mr. Baker's perspective, that is where he

3    grew up.  This is not an uncommon thing to have happening in

4    his neighborhood.  His mother was addicted to crack cocaine

5    herself, rarely at the residence.

6        Mr. Baker was raised primarily by his dad and his older

7    sister, thankfully.

8        From reviewing Mr. Carr's sentencing memorandum -- and

9    that is Mr. Baker's half brother -- it was very difficult on

10   him and Mr. Baker as well not to have their mom around.  He

11   struggled.  He struggled in school, as set out in the PSR.

12       He had addiction problems himself.  He's been addicted to

13   certainly marijuana his whole life and to cocaine as well, but

14   primarily marijuana.  So he didn't have, really, much of a

15   chance at life to have a, I guess, an occupation, like, for

16   example, I've been fortunate enough to have.

17       At any rate, as you can see by the presence of all of his

18   family members, he's greatly loved by all of his family

19   members.  His son has two sons that couldn't be here today.

20   They're in school; his stepchildren; his older sister.  His

21   father, obviously, would be here, but he's passed away.

22       So if Mr. Baker was such a terrible person, as Mr. Kowal

23   is trying to make him sound, then they wouldn't be here.  He

24   wouldn't be as loved as he is.  If the family thought they were

25   being victimized by Mr. Baker, would they be here?  Obviously,

1    they would not be.

2        So we certainly contest the government's characterization

3    of my client as victimizing his family members.

4        And he's accepted responsibility for what he did do.  He

5    didn't get in here -- come in and make the government prove

6    this and prove that.  Frankly, we were -- that was a hang-up

7    during plea negotiations, as I've stated in our sentencing

8    memorandum.

9            THE COURT:  Hold on, Mr. Frye.

10        (A brief recess was taken.)

11            THE COURT:  Thank you.

12            MR. FRYE:  Thank you, Your Honor.

13        As I was stating, the -- Mr. Baker is a very loved and

14    valued member of his family.

15        And further, if Mr. Baker was such a detestable human

16    being and a crime lord, for want of better term, as the

17    government is attempting to characterize him, he would

18    certainly not have the criminal record that he does have.  He

19    has two felony convictions; one when he was 23, I believe.  And

20    none of them -- firearms were not used.

21        Well, he has anger issues from when he was presumably

22    high, with his fiance.  But that has been many, many years ago.

23        So his criminal record does not reflect the person that

24    the government is trying to characterize him as.

25        And to the extent that he was involved in this, then, yes,

1    he is getting the four-level increase under the guidelines,

2    which he's agreed to, for organizing and managing this

3    distribution organization.  We don't contest that.  But we do

4    contest the characterization that the government has made about

5    Mr. Baker.

6        And Mr. Baker just brought these down to me, Your Honor,

7    today.  He's not in a BOP facility.  He's in a contract

8    facility up at McFarland, at the Central Valley Annex, and it's

9    just been recent that they've been able to take courses up

10    there, so he has just completed a few that I would like to read

11    into the record.  I've shown those to the attorney for the

12    government.

13        He's completed a program for a Student Guide to Drug and

14    Alcohol Abuse; a program for Adapting To Change.  He's passed

15    the program Advanced Interpersonal Communication, Building

16    Relationships Through Feedback.  He passed an Anger Management

17    course.  He has passed a Becoming Tech Savvy course; Beginning

18    a New Career course; Business Accounting and Accounting for

19    Inventory course; Business Communication; Business

20    Problem-solving, and Problem-solving Basics; a course in

21    Careers Without College; a course in Cognitive Awareness; and a

22    course in Conflicts of Interest within the Correctional

23    Community.

24        So he's not -- he's been attempting, for quite some time,

25    to take these courses, but it has just been recent that they've

1    been offered.  And he's just had proof recently that he's

2    completed them.  So I wanted to read those into the record so

3    the Court wouldn't be under the misimpression that he is not

4    attempting to better himself while he's at the correctional

5    facilities.  And he will continue to do that when he's

6    designated to the ultimate BOP facility.

7        One moment.

8        (A discussion was held between Counsel and the defendant.)

9            MR. FRYE:  So with that, Your Honor, unless the Court

10    has questions, I will submit.

11            THE COURT:  Thank you.

12        Mr. Baker, you are welcome to speak.  You are not

13    obligated to speak, in any way.  But you do have a right to

14    speak.  I'm happy to hear from you.  Obviously, your attorney

15    has spoken eloquently on your behalf.  But if you would to say

16    anything before I impose sentence, I'm happy to hear from you.

17            THE DEFENDANT:  Yeah, I just want to apologize to the

18    Court and the government and to my family.  I'm not the person

19    that they are making me out to be.  And that's all I got to

20    say, sir.

21            THE COURT:  All right.  Thank you, sir.

22        Thank you, Counsel and Mr. Baker.  Yes, you can have a

23    seat.

24        Let me take a brief recess.  I would like to meet with the

25    Probation Officer before imposition of sentence, and we'll

1    resume in a few minutes.

2         Thank you, everyone.

3              THE COURTROOM DEPUTY:  All rise.

4         (A brief recess was taken.)

5              THE COURT:  All right.  Again, thank you, Counsel and

6    Mr. Baker.  I am prepared to impose sentence.

7         Does either Counsel know of any reason why sentence should

8    not now be imposed?

9              MR. KOWAL:  Not for the government, Your Honor.

10              MR. FRYE:  No, Your Honor.

11              THE COURT:  All right.  Pursuant to the Sentencing

12    Reform Act of 1984, it is the judgment of the Court that the

13    defendant, Damion Baker, is hereby committed on Counts 1 and 12

14    of the indictment to the custody of the Bureau of Prisons for a

15    term of 168 months.  This term consists of 168 months on

16    Count 1 and 120 months on Count 12 of the indictment, to be

17    served concurrently.

18         It is ordered that Mr. Baker shall pay to the United

19    States a special assessment of $200, which is due immediately.

20    Any unpaid balance shall be due during the period of

21    imprisonment at the rate of not less than $25 per quarter and

22    pursuant to the Bureau of Prisons Inmate Financial

23    Responsibility Program.

24         Pursuant to guidelines Section 5E1.2(a), all fines are

25    waived, as I find that Mr. Baker has established that he's

1   unable to pay and is not likely to become able to pay any fine.

2       I find that the property identified in the preliminary

3   order of forfeiture is subject to forfeiture.  Any preliminary

4   order is incorporated, by reference into this judgment and

5   approved.

6       I recommend that the Bureau of Prisons evaluate

7   Mr. Baker's eligibility for the $500 Residential Drug Abuse

8   Program known as RDAP.

9       Upon release from imprisonment, Mr. Baker shall be placed

10  on supervised release for a term of five years under the

11  following terms and conditions:

12      One, the defendant shall comply with the rules and

13  regulations of the United States Probation and Pretrial

14  Services Office and Second Amended General Order 20-04.

15      Two, the defendant shall refrain from any unlawful use of

16  a controlled substance.  The defendant shall submit to one drug

17  test within 15 days of release from custody and at least two

18  periodic drug tests thereafter, not to exceed eight tests per

19  month, as directed by the Probation Officer.

20      Three, the defendant shall participate in an out-patient

21  substance abuse treatment and counseling program that includes

22  urinalysis, breath, or sweat-patch testing, as directed by the

23  Probation Officer.  The defendant shall abstain from using

24  alcohol and illicit drugs and from abusing prescription

25  medications during the period of supervision.

1    Four, as directed by the Probation Officer, the defendant

2  shall pay all or part of the cost of the court-ordered

3  treatment to the aftercare contractors.  During the period of

4  community supervision, the defendant shall provide payment and

5  proof of payment, as directed by the Probation Officer.  If the

6  defendant has no ability to pay, no payment shall be required.

7    Five, during the period of community supervision, the

8  defendant shall pay the special assessment in accordance with

9  this judgment's orders pertaining to such payment.

10    Six, the defendant shall cooperate in the collection of a

11  DNA sample from the defendant.

12    Seven, the defendant shall submit the defendant's person,

13  property, house, residence, vehicle, papers, telephones, cell

14  phones, or other areas under the defendant's control to a

15  search conducted by a United States Probation Officer or law

16  enforcement officer.  Failure to submit to a search may be

17  grounds for revocation.  The defendant shall warn any other

18  occupants that the premises may be subject to searches pursuant

19  to this condition.  Any search pursuant to this condition will

20  be conducted at a reasonable time and in a reasonable manner

21  upon reasonable suspicion that the defendant has violated a

22  condition of his supervision and that the areas to be searched

23  contain evidence of this violation.

24    Eight, the defendant shall not associate with anyone known

25  to the defendant to be a member of the Bounty Hunter Bloods

1  Gang and others known to the defendant to be participants in

2  the Bounty Hunter Bloods Gang's criminal activities, with the

3  exception of the defendant's family members.

4      The defendant may not wear, display, use, or possess any

5  gang insignias, emblems, badges, buttons, caps, hats, jackets,

6  shoes, or any other clothing that defendant knows evidence

7  affiliation with the Bounty Hunter Bloods Gang and may not

8  display any signs or gestures the defendant knows evidence

9  affiliation with the Bounty Hunter Bloods Gang.

10      Nine, as directed by the Probation Officer, the defendant

11  shall not be present in any area known to defendant to be a

12  location where the members of the Bounty Hunter Bloods Gang

13  meet or assemble.

14      Ten, when not employed or excused by the Probation Officer

15  for school, training, or other acceptable reasons, the

16  defendant shall perform 20 hours of community service per week,

17  as directed by the Probation and Pretrial Services Office.

18      Eleven, the defendant shall participate in a domestic

19  violence treatment program, as approved and directed by the

20  Probation Officer.

21      I authorize the Probation and Pretrial Services Office to

22  disclose the Presentence Report to the substance abuse

23  treatment provider to facilitate the defendant's treatment for

24  narcotic addiction or drug dependency.  Further redisclosure of

25  the Presentence Report by the treatment provider is prohibited

1    without the consent of this Court.

2        I have selected this sentence for the following reasons:

3        Mr. Baker, I have considered all of the aggravating and
4    mitigating circumstances in your case, and the advisory
5    guidelines have generally accounted for the facts of the case,
6    including the amount of the drugs, the possession of a firearm,
7    Mr. Baker's role in the offense, and his acceptance of
8    responsibility.  I will say that a two-level upward adjustment
9    could have been applied in this case for Mr. Baker's
10   maintenance of premises that was used to manufacture or
11   distribute a controlled substance.  That was not recommended by
12   the Probation Officer in this case, and I certainly did not
13   apply it, but Mr. Baker did receive the benefit of not having
14   that two-level upward adjustment applied in his case.

15       As we've discussed today and as set forth in detail in the
16   Presentence Report, Mr. Baker does stand convicted of a very
17   serious crime.  He was the kingpin of a large gang-based drug
18   trafficking operation that included 11 codefendants and a
19   number of unindicted coconspirators.  This conspiracy was in
20   effect at least through 2019 and 2020, and its impact was just
21   significantly harmful, particularly in the Watts area of Los
22   Angeles, where residents are already and have historically
23   suffered mightily from poverty, crime, gang activity, and drug
24   addiction.  And Mr. Baker sadly exploited the drug dependency
25   of the residents of that community for his own personal gain.

As has been stated, he recruited, and he used members of
the organization to further the organization's goals.  This
included multiple family members, as has been said, including
his fiance and the mother of two of his children, his half
brother, his stepchild, and his elderly mother-in-law.

Mr. Baker continuously, throughout the existence of the
conspiracy supervised and directed others within the
organization in their drug-trafficking activities.  He helped
them obtain, cook, package, and sell crack cocaine, he operated
a stash or crack house in the Nickerson Gardens Housing
Project, and he distributed and stored drug proceeds and
organized and engaged in himself in numerous individual drug
transactions.  The government's wire intercepts consistently
show Mr. Baker to be the central person in charge of different
drug transactions of his codefendants and of the organization
as a whole.

This does not mean that Mr. Baker does not have other
redeeming qualities.  All human beings do.  And based on the
letters I've seen, I can see that Mr. Baker is loved by his
family members.  But I have to weigh all of the factors and the
danger that his conduct has presented to the community and that
future conduct could present.

So despite convictions for two prior felonies and a
misdemeanor that prevented him from possessing firearms and
ammunition, he was arrested in his home in possession of

1    $23,000 in cash and a 9mm pistol and ammunition that he used to

2    protect himself, the drugs, and the drug money that was earned

3    through the operation.  In short, this particular conspiracy

4    would not have exited but for Mr. Baker.

5         In addition to the serious nature of the crime itself, I

6    did consider Mr. Baker's personal history and his background in

7    selecting the sentence.  He just turned 46 years old, and as

8    detailed in the Presentence Report, Mr. Baker's criminal

9    history includes a felony conviction for possession for sale

10   and sale of cocaine and two felony and misdemeanor convictions

11   for domestic violence against two different women, including

12   Joycelyn Stroupe, a codefendant in this case and the mother of

13   two of Mr. Baker's children.

14        As set forth in the Presentence Report, Ms. Stroupe told

15   the police, at the time of that crime, that Mr. Baker had

16   become enraged during an argument and that he punched her twice

17   in the mouth, causing swelling and a laceration.

18        The victim in the other domestic violence case reported

19   that Mr. Baker had threatened her and assaulted her.  Mr. Baker

20   was sentenced to prison for each felony, and he was placed on

21   probation for the misdemeanor.  His multiple terms of parole

22   and probation in all three cases were revoked and reinstated

23   many times, which is consistent with the high risk of

24   recidivism, a lack of respect for the law and for the courts,

25   that gave him multiple chances on probation in the past.

```
1        The last revocation of probation occurred in May of 2014,
2   and it resulted in the issuance of a bench warrant that remains
3   outstanding to this day, which means that Mr. Baker has never
4   gone back to court to address that violation.
5        The prior prison sentences and the multiple grants of
6   probation did not deter him from committing the crimes that are
7   charged in this case, which are serious.  In fact, Mr. Baker
8   committed the crimes in this case while he was still under a
9   criminal justice sentence for probation in the last case that I
10  just mentioned.  He was not given any points under his criminal
11  history category for that fact as a result of the recent
12  amendment to the sentencing guidelines.
13       Mr. Baker also has 11 other arrests that did not result in
14  convictions that included other acts of violence against women
15  and possession of crack cocaine and the indicia of the sales of
16  crack cocaine, including the presence of scales, baggies, and
17  large amounts of cash.
18       When I weigh all of this against Mr. Baker's personal
19  history and background, the aggravating factors clearly
20  overwhelm the mitigating factors.  Unlike so many defendants
21  before me and defendants in this case, Mr. Baker's basic
22  necessities were met in his early years.  He had loving and
23  supportive parents.
24       Ironically, his mother was addicted to crack cocaine, as
25  has been mentioned today and is in the Presentence Report, and
```

1    she was away from the family when she was using.  So it's

2    especially troubling that Mr. Baker continued this conduct in

3    light of his personal history with his mother having suffered

4    from addiction, because the conduct ultimately continues to

5    harm and perpetuate addiction in a community that's already

6    struggling.

7        Mr. Baker himself has used alcohol, marijuana, and cocaine

8    throughout his life, and he's not undergone any substance abuse

9    treatment.

10        I hope, Mr. Baker, that you will be proactive and pursue

11    treatment while you're in custody in the hopes that, when

12    you're released, you will have beaten your addiction.

13        I cannot depart or vary downward because, in my view, it

14    would put the public at risk, given the seriousness of the

15    conduct and Mr. Baker's personal criminal history.  And it

16    would result in unwarranted sentencing disparities with other

17    defendants who have similar criminal histories and have been

18    convicted of similar conduct.

19        As the parties know, neither the Court nor the Probation

20    Officer are parties to the Plea Agreement and are not bound by

21    it.  Mr. Baker has received a significant benefit from his Plea

22    Agreement, including what I expect will be a dismissal of six

23    counts.  Among them, a 924(c) count that could have resulted in

24    a consecutive, mandatory minimum five-year sentence, along with

25    a plea to a lesser included offense, which did not trigger a

ten-year minimum mandatory.  Resulted in a lower maximum
possible sentence.  And I wasn't required to accept the plea to
the lesser, but I did.

So he has received a significant benefit in addition to
the two levels under the guidelines that have not been applied
for the maintenance of a residence that was used in the
trafficking of drugs.

So the sentence that I have imposed today reflects the
seriousness of the crimes here.  It is intended to and, I
believe, will protect the public from further crimes by
Mr. Baker.  It is intended to afford adequate deterrence to
criminal conduct by Mr. Baker in the future.  And his time at
in the Bureau of Prisons will give Mr. Baker needed educational
or vocational training opportunities, medical care, or other
correctional treatment.

The statement of reasons will be included in the
commitment order and judgment and shall be provided to the U.S.
Probation Office, the U.S. Sentencing Commission, and the
Bureau of Prisons.

Is there a request for housing or a recommendation?

MR. FRYE:  Yes.  Southern California, Your Honor.

THE COURT:  All right.  I will recommend that
Mr. Baker be housed --

MR. FRYE:  One moment, Your Honor.

(A discussion off the record between Counsel and Defendant.)

1          MR. FRYE:  Southern California, Your Honor.  Thank

2    you.

3          THE COURT:  I will recommend that Mr. Baker be housed

4    within the confines of Southern California to facilitate visits

5    by family.

6          Please understand, Mr. Baker, that it is the Bureau of

7    Prisons who determines where individuals serve their sentences,

8    not judges.  All I can do is recommend, so I can't order the

9    Bureau of Prisons to do it.  But that is my recommendation.

10          You do have the right to appeal your conviction if you

11    believe your guilty plea was somehow unlawful or involuntary or

12    if there was some other fundamental defect in the proceedings

13    that was not waived by your guilty plea and your Plea

14    Agreement.  You also have a right to appeal your sentence under

15    some circumstances, especially if you think that the sentence I

16    imposed today is illegal or contrary to law.

17          A defendant, however, may waive appellate rights as part

18    of a Plea Agreement, and you did enter into a Plea Agreement

19    that waived some or all of your rights to appeal your

20    conviction and your sentence.  Such waivers are generally

21    enforceable, and the Plea Agreement controls your right to

22    appeal.  But if you believe that the waiver itself is

23    unenforceable, you can present that theory to the Court of

24    Appeals.

25          If you did retain a right to appeal, with few exceptions,

a Notice of Appeal must be filed within 14 days of the judgment being entered in this case.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  If you are unable to afford a transcript of the record in the case, one will be provided at government expense.  If you're unable to afford to pay for the cost of an appeal or the filing fee, you may apply for leave to appeal in forma pauperis.

If you do not have Counsel to act on your behalf and if you request it, the Clerk of the Court will prepare and file a Notice of Appeal on your behalf.  And, again, you must make the request and file the Notice of Appeal within 14 days of the entry of judgment.

The Notice of Appeal must designate the judgment or the order appealed from and the fact that you are appealing to the U.S. Court of Appeals.  It should designate the portion of the proceedings that are not already on file and that you deem necessary for the court reporter to include as part of the record on appeal.

Does the government move to dismiss the remaining counts?

MR. KOWAL:  Yes, Your Honor.  And for the record, I believe it's Counts 2 and 3, 5 and 6, 8, 9, and 10.

THE COURT:  The motion is granted.

Anything else today?

1          MR. KOWAL:  Nothing from the government, Your Honor.

2          MR. FRYE:  No, Your Honor.

3          THE COURT:  All right.  Good luck to you, Mr. Baker.

4     Take advantage of all the programs at the Bureau of Prisons.

5          THE COURTROOM DEPUTY:  All rise.

6       (Adjourned at 1:37 p.m.)

7                               -oOo-

8

9

10

11

12

13

14

15                    REPORTER'S CERTIFICATE

16

17

18       I certify that the foregoing is a correct transcript of

19     proceedings in the above-entitled matter.

20

21     /s/ Suzanne M. McKennon, CSR, CRR, RMR
                                        Date:  03/01/2024
22     United States Court Reporter

23

24

25